James PITTS, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, Secretary of
Health and Human Services,
Defendant–Appellee.

No. 89–3249.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 5, 1990.

Decided Jan. 30, 1991.

P. Jeffrey Schlesinger, Highland, Ind., for plaintiff-appellant.

Andrew B. Baker, Jr., Asst. U.S. Atty., Hammond, Ind., Robert C. Stephens, Dept. of Health and Human Services, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Plaintiff James Pitts appeals from a denial of his request for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* and for disability benefits under the Supplemental Security Income program under Title XVI of the Act, 42 U.S.C. §§ 1381, 1382c. Pitts claims that he is disabled due to a combination of health problems including a bad back, bursitis, mild emphysema and a stomach ulcer. On appeal he charges that the Appeals Council erred in disregarding the recommendation of the Administrative Law Judge (ALJ) to grant benefits, and in finding that his prior work in a factory as a door trim assembler was substantial gainful employment.

## I. FACTS

Pitts was born on January 21, 1923 and has a tenth grade education.[1] In 1965 he started work as a factory assembly line carpenter, a job which involved assembling and lifting 100 pound doors. Sometime around the end of 1979, Pitts and a gang of men were lifting several eighty foot long wooden trusses when one of the boards slipped. Pitts wrenched his back. He went home and did not return to work for several days. He received heat treatments and massages as an outpatient at a hospital.

Pitts continued to work as a factory carpenter for several months, but due to nagging back problems was transferred to lighter duty as a door trim assembler. In that job he installed the wooden trim around door jambs with an air compressor and lifted no more than eight pounds. He worked at this job for about a year until November 15, 1980, when he faced a lay off. Several months later the factory closed down. Pitts later found part-time work as a delivery and mechanical maintenance man for an electric company. He sat while he worked and never lifted more than ten pounds. He was laid off from this job in March 1986.

Pitts filed applications for disability insurance benefits and supplemental security income on June 10, 1983, claiming that he had been disabled due to back trouble and bursitis since November 15, 1980. The Secretary denied the applications initially and on reconsideration. Pitts then filed a request for a hearing before an ALJ, which was held on February 23, 1984. Pitts testified at the hearing and submitted a number of medical reports.

The first report came from Dr. Byung Hyun, who in June 1983 reviewed an x-ray of Pitts' spine and diagnosed a mild degenerative arthritic change in the lower back and neck. He also concluded that Pitts had a slight encroachment of a neural passage in the neck and a slight narrowing of the space between two lower back discs. Dr. Yong Song examined Pitts soon after and confirmed that Pitts had mild degenerative changes in the lumbar spine. To relieve the back pain, Dr. Song suggested physical therapy on a regular basis. Dr. Henry Marciniak reviewed these medical records and determined that although Pitts had

---

**1.** In violation of Federal Rule of Appellate Procedure 28(a)(3) and Circuit Rule 28(d), Pitts has failed to include any statement of facts in his appellate brief. The lack of such a statement makes the court's work more difficult and time-consuming. *See Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1500 n. 2 (7th Cir.1990).

The tactic is also perplexing given the fact specific nature of disability claims. Pitts bears the responsibility for not assembling an adequate record, *Haas v. Abrahamson,* 910 F.2d 384 n. 1 (7th Cir.1990), and we will review the facts as presented in the Secretary's brief.

back problems and bursitis, they did not limit most of his daily activities.

In October 1983, Dr. K. Markey, a treating physician, diagnosed Pitts as having lumbar disc pathology. He noted that Pitts experienced muscle spasms, walked unassisted but with a limp, and had a range of motion within fifty to seventy percent of the normal range. Pitts had muscle weakness in the lower back and hamstring muscles, and had lost some feeling in the right thigh. Dr. Markey also reported that Pitts experienced some shortness of breath, but that his lungs were clear. Later, in 1984, Markey stated that Pitts' condition was degenerative and he should avoid heavy lifting, pushing, pulling or climbing. He concluded that Pitts could engage in "sit down" sedentary work.

In November 1983, Dr. Peter Winston, an examining physician, interpreted some new x-rays and found no active intrapulmonary abnormalities and minimal linear scarring in the upper right lung. A shoulder x-ray revealed minimal spurring, and a lower back x-ray showed a marginal narrowing of disc space and a tiny spur. Dr. Winston diagnosed a mild chronic obstructive pulmonary disease, a history of right shoulder pain, and lower back pain secondary to mild degenerative joint disease. In December 1983, Dr. Edward Bloemker reviewed Pitts' medical records and found that although Pitts had back problems, bursitis and emphysema, these impairments did not limit his ability to work. The ALJ denied benefits after the first hearing, but the case was later remanded for a new hearing.

After a second hearing on May 29, 1986, Pitts submitted the reports of three additional doctors, which showed that Pitts had developed a stomach ulcer and had a minor case of emphysema. Dr. A. Ahmadzai reported positive evidence of a peptic ulcer, chronic lung disease, and a history of alcohol abuse. An examination of Pitts' neck and nervous system were negative. Dr. I. Chang, a consulting physician, noticed slight emphysematous lung changes and a stomach ulcer. Dr. M. Shabeeb, another consulting physician, concurred and surgery on the ulcer was performed without

complications. In June 1986, well after the surgery, Dr. Ahmadzai reported that the only restrictions he imposed on Pitts were to avoid "exertion and hard work" and to stop smoking, although he questioned whether Pitts would ever engage in full-time employment.

## II. ADMINISTRATIVE AND DISTRICT COURT PROCEEDINGS

In the first decision denying benefits, the ALJ went through a five-step analysis prescribed by 20 C.F.R. §§ 404.1520, 416.920, and denied benefits at step two because Pitts did not have a severe impairment. The Appeals Council denied review of this decision. On appeal to the district court, Judge Moody initially granted the Secretary's motion for summary judgment and affirmed the Secretary's decision. On August 8, 1985, Judge Moody vacated that order and remanded the case to the Secretary because of this court's decision in *Johnson v. Heckler*, 769 F.2d 1202 (7th Cir.1985), *vacated*, 482 U.S. 922, 107 S.Ct. 3202, 96 L.Ed.2d 690 (1987), which enjoined enforcement of step two of the regulations at 20 C.F.R. §§ 404.1520(c) and 416.920(c). The Supreme Court vacated the decision in *Johnson* in light of the Court's decision in *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), which upheld the validity of step two.

After remand to the Secretary, the ALJ held a second hearing on May 29, 1986 and thereafter issued a recommended decision. This time the ALJ granted benefits as of May 15, 1984, the day after the earlier hearing. The ALJ stated that Pitts' condition had deteriorated and that he was now unable to engage in heavy exertional work such as carpentry. The ALJ noted degenerative changes in the lumbar and cervical spines, mild obstructive pulmonary disease, and a history of ulcer disease with corrective surgery in November 1985. Although the ALJ found that Pitts could engage in sedentary and possibly light work, the ALJ found Pitts disabled in light of his medical condition, his age—Pitts was then sixty-three-years-old—, and his limited job skills. The decision made no mention of Pitts'

ability to engage in his past relevant work as a door trim assembler.

On February 19, 1987, the Appeals Council declined to adopt the ALJ's decision. At step four, the Appeals Council determined that Pitts retained the residual functional capacity to perform his past work as a door trim assembler. The Appeals Council stated that the x-rays showed only a mild degenerative change in lumbar spine, the complaints of shoulder pain were unsupported, and no evidence showed the ulcer to be recurrent. The Appeals Council questioned whether Pitts would have been capable of performing the heavy work involved with carpentry until 1984 as the ALJ had found and concluded instead that Pitts was capable of engaging in a wide range of light work at all times. On a second appeal to the district court, Judge Sharp granted the Secretary's motion for summary judgment and affirmed the Secretary's decision.

## III. ANALYSIS

■ We review the decision of the Appeals Council rather than the ALJ. *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir.1986). Although the findings of the ALJ are not binding on the Council, they should not be ignored. *Parker v. Sullivan*, 891 F.2d 185, 189 n. 2 (7th Cir.1989) (*per curiam*). The conflicting findings are part of the record as a whole and are considered in determining whether the Council's decision is supported by substantial evidence. *Id.* The evidence supporting the Appeals Council's decision may be less substantial when an impartial, experienced examiner who has observed the witness and lived with the case has drawn different conclusions. *Bauzo*, 803 F.2d at 922 (*quoting Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496–97, 71 S.Ct. 456, 468–69, 95 L.Ed. 456 (1951)); *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984) (when the Appeals Council differs from the ALJ on a question of credibility, the Council's decision must be subjected to especially careful scrutiny). We must affirm the decision to deny benefits as long as the findings of the Secretary are supported by substantial evidence and the Secretary applied the correct legal stan-

dards. 42 U.S.C. § 405(g). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Initially we note that Pitts is now sixty-seven-years-old and his entitlement to disability benefits, if any, is limited to the period between the onset of the disability and reaching the age of sixty-five, the social security retirement age. 42 U.S.C. §§ 416(1), 423(1)(B); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990). No such limitation applies to supplemental income, which by its terms applies to individuals who have attained the age of 65, are blind, or disabled. 42 U.S.C. § 1381.

■ When analyzing a claim for disability benefits, the Social Security regulations prescribe a five-step sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order. (1) Is the claimant presently employed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work in the economy? 20 C.F.R. §§ 404.1520, 416.920. *See also Kapusta v. Sullivan*, 900 F.2d 94, 95 n. 4 (7th Cir.1989) (the standards for disability benefits and supplemental income are identical). Once a claimant establishes proof regarding steps one through four, the claimant's burden of proof is met. *Ray v. Bowen*, 843 F.2d 998, 1001 (7th Cir.1988). The burden then shifts to the Secretary to prove that the claimant remains capable of performing other work in view of the vocational factors of age, education, and work experience. *Id.*

Pitts challenges the Appeals Council's finding that his subjective complaints, including pain, were not credible in light of the medical evidence. Specifically Pitts argues that the Appeals Council should have deferred to the ALJ regarding Pitts' credibility on the extent of his pain. The problem with his argument is that the ALJ in

this case made no finding on Pitts' credibility. In fact the ALJ's discussion was based principally on the new medical evidence that Pitts submitted after the second hearing. For instance the ALJ credited Dr. Ahmadzai's statement that Pitts could not be expected to engage in full-time gainful employment. The ALJ also considered the new evidence of Pitts' stomach and breathing problems in relation to his other medical problems, age and skills. Therefore we decline Pitts' invitation to apply a higher degree of scrutiny to the decision of the Appeals Council based on the Council's finding that Pitts was not credible.

■ In making its credibility determination, Pitts supposes that the Appeals Council had in mind his testimony at the first hearing to the effect that he could lift no more than ten to fifteen pounds and stand no more than twenty minutes as compared with his testimony at the second hearing that he could lift a small bag of groceries and stand for ten or fifteen minutes. The Appeals Council did not appear to be concerned with internal inconsistencies in Pitts' testimony. In fact these statements were consistent with the degenerative nature of his back problem. The Appeals Council did discount Pitts' complaints regarding the extent of his pain in light of the objective medical evidence which showed only minor incapacities. The Appeals Council was entitled to give more emphasis to the objective medical evidence on this point than to the claimant's testimony, particularly in the absence of any finding by the ALJ on Pitts' credibility.

Next Pitts argues that the Appeals Council erred in finding that his past relevant work as a door trim assembler was substantial gainful activity. The regulations define substantial gainful activity as work "that involves doing significant physical or mental activities ... even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.... [and which is done] for pay or profit." 20 C.F.R. §§ 404.-1572(a)-(b), 416.972(a)-(b). The regulations also provide that:

We consider how well you do your work when we determine whether or not you are doing substantial gainful activity. If you do your work satisfactorily, this may show that you are working at the substantial gainful activity level. If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that you are not working at the substantial gainful activity level. If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer ..., this does not show that you are working at the substantial gainful activity level.

20 C.F.R. §§ 404.1573(b), 416.973(b).

■ In this case Pitts presented no complaints or evidence regarding an inability to perform the job duties of a door trim assembler after he hurt his back in 1979. The job required minimal lifting of around eight pounds, which Pitts testified he could manage. More importantly, Pitts satisfactorily performed this job for at least one year before he was laid-off. *See Dudley v. Secretary*, 816 F.2d 792, 794 (1st Cir.1987) (*per curiam*) (three months sufficient time to establish substantial gainful employment and past relevant work). As a door trim assembler, Pitts was paid the same salary as he had been paid when he worked as a carpenter. His argument that this was a make-work position must be rejected because the job existed prior to his injury and provided a valuable service to the employer as evidenced by the salary. Also another man worked at the same job with Pitts. Finally the fact that Pitts was laid off several months before the company closed was a function of his low seniority in the plant rather than the nature of the job. We hold that substantial evidence supports the Appeals Council's determination that Pitts' prior job as a door trim assembler was a substantial gainful activity.

## IV. CONCLUSION

Because substantial evidence supported the Appeals Council's finding that Pitts

was capable of performing his former job as a door trim assembler and that this job was a substantial gainful activity, the decision of the district court granting summary judgment in favor of the Secretary is

AFFIRMED.